IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                                            PLAINTIFF

v.                                     Case No. 6:24-cr-60006

WILLIAM KENNETH FARBER                                                              DEFENDANT

## ORDER

Before the Court is the Government's Notice of Potential Conflict of Interest ("Notice") regarding the firm Sutter & Gillham, P.L.L.C.'s ("Sutter & Gillham") representation of Defendant William Kenneth Farber ("Farber"). ECF No. 28. Luther Sutter ("Sutter"), as a member and on behalf of Sutter & Gillham, filed responses in opposition to the Government's Notice of a potential conflict of interest. ECF Nos. 30 & 39. The Government responded to Sutter's initial response. ECF No. 36. The Court subsequently conducted a hearing on the issue. ECF Nos. 41 & 42. Sutter has filed a post-hearing brief on the issue. ECF No. 45. The Government has responded to Sutter's post-hearing brief. ECF No. 46. The Court finds the matter ripe for consideration.

### I. BACKGROUND

On March 6, 2024, a grand jury in and for United States District Court for the Western District of Arkansas returned an eight-count Indictment against Farber. ECF No. 1. Counts Three though Eight of the Indictment contain allegations of wire fraud in violation of 18 U.S.C. § 1343, aggravated identify theft in violation of 18 U.S.C. § 1028A, and money laundering in violation of 18 U.S.C. § 1957. These counts revolve around an alleged scheme to defraud the United States Small Business Administration ("SBA"), J.C. Clift Truck Lines, Inc. ("J.C. Clift"), and Norman Clift through fraudulent and unauthorized actions Farber purportedly took on behalf of J.C. Clift and Norman Clift.

Around April 2023, prior to the Indictment but after the initiation of the federal investigation into Farber and execution of search warrants in furtherance of the investigation, attorneys Travis Morrisey and Morse Gist informed the Government that they represented Farber in relation to the criminal investigation.[1]  In August 2023, the Government met with Farber and his counsel to present an overview of the evidence supporting what would be the allegations in the Indictment.  In September 2023, Farber initiated a civil action ("State Action") in the Hot Springs County, Arkansas Circuit Court against Norman Clift, the 50% owner of J.C. Clift.  ECF No. 28-1.  Farber's co-plaintiff in the State Action is J.C. Clift, and they are represented in that matter by Sutter and another member of Sutter & Gillham.  On March 6, 2024, the Indictment was issued against Farber.  On April 10, 2024, Sutter entered his appearance on behalf of Farber in this criminal matter.  ECF No. 17.  In August 2024, the Government again met with Farber and his counsel of record, which now included Sutter, and presented the evidence underlying the Indictment.  The Government states that it provided Sutter with a copy of the documentary evidence supporting its presentation on August 29, 2024, and Sutter has not disputed this.

On October 10, 2024, the Government filed its Notice concerning potential conflicts of interest regarding Sutter and his firm's representation of Farber and requested a hearing on the matter.  ECF No. 28.  The Government contends that there is an existing or potential conflict of interest within Sutter's concurrent representation of Farber in this matter, of J.C. Clift in the State Action, and of several J.C. Clift employees during the grand jury investigation preceding the Indictment.  Sutter opposed the request for a hearing and moved to compel the Government to provide him with discovery, asserting that he had not received discovery from the Government and thus could not address any allegations of a conflict of interest.  ECF No. 30.  The Government

---

[1] Though Travis Morrissey entered his appearance in this matter on March 14, 2024, Morse Gist did not enter his appearance until October 29, 2024.

responded in opposition, stating that the allegations in the Indictment and the information provided to Sutter in August 2024 provided more than sufficient information to address the issue. ECF No. 36. The Court found Sutter's request moot because the Government had already provided discovery to Farber's other counsel of record. ECF No. 38. Sutter then filed a belated reply to the Government's response in which he disputed the existence of any conflict within his firm's concurrent representation of Farber, J.C. Clift, or the J.C. Clift employees who testified before the grand jury. ECF No. 39.

On November 18, 2024, the Court conducted a hearing regarding the Government's Notice of a potential conflict of interest. ECF No. 41 (hereinafter "Trans."). Mr. Morrissey and Mr. Gist appeared on behalf of Farber, while Sutter appeared on behalf of himself and his firm. The Government presented its argument and supporting exhibits proffered for the hearing. Sutter mostly deferred substantive argument at the hearing, instead contending that he could not adequately counter the Government's arguments without full discovery and that a re-hearing with additional witnesses was necessary. Sutter then filed his post-hearing brief, generally arguing that the Government had failed to show the existence of a conflict and that an additional hearing was required to allow him to counter the Government's accusations. ECF No. 45. The Government responded to Sutter's brief, generally arguing that a potential, if not actual, conflict of interest is clearly present which cannot be waived and requires that Sutter be disqualified as Farber's counsel of record in this matter. ECF No. 46.

## II. DISCUSSION

### A. Applicable Law

The Sixth Amendment gives a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "Because this right means little if the assistance

is ineffective, the right also encompasses the right to the effective assistance of counsel." *United States v. Poe*, 428 F.3d 1119, 1123 (8th Cir. 2005). "To guarantee the effective assistance of counsel, a criminal defendant enjoys the right to be represented by counsel free from any conflicts of interest." *Id*. (citing *Wood v. Georgia*, 450 U.S. 261, 272 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.")). "[W]hen the government is aware of a conflict of interest, it has a duty to bring it to the court's attention and, if warranted, move for disqualification." *United States v. Migliaccio*, 34 F.3d 1517, 1528 (10th Cir. 1994) (citing *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991)).

This Court utilizes the Arkansas Rules of Professional Conduct ("Arkansas Rules") when analyzing attorney conduct. *See* Local Rules, App'x Rule IV ("The Code of Professional Responsibility or Rules of Professional Conduct adopted by this Court is the Code of Professional Responsibility or Rules of Professional Conduct adopted by the highest court of the state in which this Court sits[.]"). The Arkansas Rules apply when determining "whether an attorney should be disqualified because of a conflict of interest[.]" *Norman v. Norman*, 970 S.W.2d 270, 272-73 (Ark. 1998). Attorneys cannot represent a client when such representation involves a concurrent conflict of interest, which exists if "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer[.]" Ark. R. Prof'l Conduct 1.7(a)(1)-(2). Notwithstanding the restrictions in Rule 1.7(a), a lawyer with a concurrent conflict of interest may represent a client if:

    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

    (2) the representation is not prohibited by law;

4

>    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
>    (4) each affected client gives informed consent, confirmed in writing.

Ark. R. Prof'l Conduct 1.7(b).

Disqualification motions are subject to significant scrutiny. *See Doste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007); *Machea Transp. Co. v. Phila. Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006). "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Machea Transp. Co.*, 463 F.3d at 833; *and see Weigel v. Farmers Ins. Co., Inc.*, 158 S.W.3d 147, 150 (Ark. 2004). ("[D]isqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship; yet it is a drastic measure to be imposed only where clearly required by the circumstances.") "We have consistently taken strong positions in situations where the public's confidence in attorneys might be eroded by the appearance of a conflict of interest." *First Am. Carriers, Inc. v. Kroger Co.*, 787 S.W.2d 669, 671 (Ark. 1990).

### B. Potential Conflict Regarding J.C. Clift

The Government's initial filings regarding a potential conflict of interest argue that there is an inherent conflict within Sutter's representation of Farber because Sutter also represents J.C. Clift in the State Action. ECF Nos. 28 & 36. The Government contends that J.C. Clift is a direct or indirect victim of Counts Three through Eight of the Indictment, making Farber's interests directly opposed to J.C. Clift's interests. The Government asserts that this presents an obviously impermissible conflict of interest under Arkansas Rule 1.7(a) and is not waivable under Arkansas Rule 1.7(b). The Government elaborated on the alleged conflict during the hearing on this matter

by outlining the facts it intends to prove at trial and some of the evidence that would support its case. Trans. at 25-46. In brief summary, Farber allegedly engaged in a series of fraudulent acts, such as forging shareholder authorizations and shareholder signatures, to fraudulently open a bank account in J.C. Clift's name and then fraudulently obtain SBA loans on behalf of J.C. Clift. Farber then allegedly utilized SBA loan proceeds for purchases and payroll expenses in support of his personal business ventures. The Government crystallized how J.C. Clift was allegedly victimized by explaining that J.C. Clift must repay approximately $1,000,000 from the SBA loan that was used for Farber's separate personal business and did nothing to benefit J.C. Clift. Trans. at 46-49.

Sutter broadly argues in his initial opposition to the Government's Notice that there is no evidence of a conflict in his representation of J.C. Clift and, alternatively, that he does not possess sufficient evidence to counter the Government's accusations. ECF Nos. 30 & 39. Sutter asserts that he has not received full discovery from the Government and is unable to properly address and dispute the existence of a conflict without that material. Sutter also contends that his representation of J.C. Clift in the State Action creates no reason for disqualification because that case is factually divergent from this matter and Farber's other counsel can conduct any questioning of witnesses at trial that could implicate a conflict of interest. At the hearing on this issue, Sutter again stated that he is unable to counter the Government's assertion of a conflict of interest because he has not received complete discovery. Trans. at 14-15. Sutter requested another hearing and deferred arguments for post-hearing briefing, arguing that he had not received the exhibits supporting the Government's presentation until just before the hearing and that he needed additional time to dispute the facts supporting the presentation. Trans. at 52-53, 61-62.

In Sutter's post-hearing brief, he first reiterates his request for another hearing on this issue and contends that due process requires such prior to any determination on disqualification. ECF

No. 45. Sutter also reiterates that he has not received full discovery from the Government, which also undermines his right to due process. Sutter then argues that the Government's allegations against Farber are unsubstantiated and that he can present numerous witnesses who can demonstrate that "Farber did not engage in such intentional conduct." *Id*. at p. 5. Sutter then contends that this failure precludes finding the existence of a conflict of interest. Sutter also asserts that the Government has failed to present any position taken by Farber or J.C. Clift that are directly adverse to the other, and that any potential conflict issues with J.C. Clift that arise at trial can be handled by independent counsel.

In response, the Government first disputes that it has not provided discovery, noting that it has produced all material to Mr. Morrissey and Mr. Gist and that Sutter has access through co-counsel. ECF No. 46. The Government then argues that there is indisputably direct adversity between Farber and J.C. Clift under Arkansas Rule 1.7(a) because Farber is accused of defrauding J.C. Clift and leaving it to pay back approximately $1,000,000 worth of loan proceeds from which it never benefitted. The Government contends that Sutter erroneously attempts to dispute the allegations underlying the Indictment to avoid acknowledging that the current circumstances preclude his representation of Farber under Arkansas Rule 1.7(a). The Government also contends that there is no possibility of a waiver of the conflict under Arkansas Rule 1.7(b) because no counsel could reasonably believe that they could provide diligent representation to both the accused and alleged victim in a criminal prosecution.

The Court finds that there is an unwaivable conflict of interest present in Sutter's concurrent representation of Farber and J.C. Clift. Whether the conflict is fully realized at this moment or merely potential, the allegations underlying Counts Three through Eight of the Indictment and the facts the Government intends to prove at trial clearly place Farber and J.C. Clift

at opposite positions in this matter. Sutter's duty to advocate for Farber's innocence is in direct conflict with J.C. Clift's interest in seeking justice and restitution from an individual that allegedly defrauded it. This is a situation in which Sutter's representation of one client is "directly adverse" to another, or at the very least creates a "significant risk" of materially limiting his responsibilities to another client. Ark. R. Prof'l Conduct 1.7(a); *and see* Ark Rule Prof'l Conduct 1.7 cmt. 29 ("[B]ecause the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained."). Further, the Court does not view this conflict as waivable under Arkansas Rule 1.7(b) because it is not objectively reasonable for any attorney to believe that their simultaneous representation of a defendant and an alleged victim in a criminal prosecution would lead to no diminution of the diligence owed to either. Ark. R. Prof'l Conduct 1.7(b)(1); *and see* Ark. R. Prof'l Conduct 1(i) ("'Reasonable belief' or 'reasonably believes' when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable."). Therefore, Sutter's representation of Farber violates Farber's Sixth Amendment right to counsel free from conflicts of interest, *see Poe*, 428 F.3d at 1123, and the extreme measure of disqualification is "clearly required by the circumstances." *Weigel*, 158 S.W.3d at 150. Sutter and all attorneys at the firm Sutter & Gillham must be disqualified from representing Farber in this matter. *See* Ark. R. Prof'l Conduct 1.10 ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[] 1.7[.]").

  Sutter's lone consistent substantive argument is that he should be permitted to present more evidence regarding Farber's alleged actions to disprove the existence of a conflict, which fundamentally misunderstands that the Court is currently tasked with determining if a potential

8

conflict of interest exists and not whether Farber is guilty or innocent. Though Sutter might believe that he can demonstrate Farber's innocence at trial, he acknowledged at the hearing that a guilty verdict against Farber would indicate that he has a conflict of interest in his representation of both Farber and J.C. Clift.[2] Trans. at 62. As a general idea, it would be foolish for a court to wait for a jury verdict to inform it of whether a defendant's Sixth Amendment right to conflict-free counsel has been respected. More importantly, a situation in which a guilty verdict is the indicator of the existence of a conflict would result in the verdict being susceptible to reversal on appeal. *See Mickens v. Taylor*, 535 U.S. 162, 167-68 (2002) (noting that there are circumstances in which a criminal defendant represented by counsel with a conflict of interest creates an automatic reversal rule).

Finally, reaching this decision without a second hearing does not violate Sutter's right to due process. Due process requires that an attorney subject to sanctions must be provided notice of the sanction being considered by the court and the opportunity to be heard. *Cole v. U.S. Dist. Ct. for the Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004); *White v. General Motors Corp., Inc.*, 908 F.2d 675, 686 (10th Cir. 1990); *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1211 (11th Cir. 1985). Sutter has been provided with the Government's Notice (ECF No. 28), has submitted two initial responses to the Notice (ECF Nos. 30 & 39), has participated in a hearing regarding the Notice, and has submitted a post-hearing brief (ECF No. 45). If disqualification because of a conflict of interest is a sanction requiring due process,[3] Sutter has already received more than what

---

[2] "And if J.C. Clift is found to be a victim, then, yes, I may have a conflict representing J.C. Clift and Mr. Farber at the same time. . . . On some version of the facts, I will concede to you that there could be a conflict." Trans. at 62.

[3] The Court notes that every case cited by Sutter regarding his due process rights for attorney sanctions involved alleged misconduct and unethical behavior. *See G.J.B. & Assoc., Inc. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990) (determining the due process required to impose sanctions for frivolous filings); *Kleiner*, 751 F.2d at 1211 (determining if due process was satisfied for an attorney sanctioned for lying while testifying); *Mattox v. Disciplinary Panel of the United States Dist. Court for the Dist. of Colo.*, 758 F.2d 1362, 1368-69 (10th Cir. 1985) (determining the due process requirements for an attorney seeking readmission to a district court's bar after prior disbarment for

due process requires. *See*, *e.g.*, *White*, 908 F.2d at 686 ("[A]n opportunity to be heard does not require an oral or evidentiary hearing on the issue. The opportunity to fully brief the issue is sufficient to satisfy due process requirements."). Also, the Court is not persuaded by Sutter's contention that the Government has failed to provide discovery and thus deprived him of due process. It is not disputed that the Government provided Sutter's co-counsel with discovery. Trans. at 14-15. The Court finds it unnecessary to compel the Government to provide the defense with material it already possesses. Also, Sutter's argument regarding discovery is tied to his argument that disputing the allegations against Farber is relevant to addressing whether a conflict of interest exists, which the Court has already deemed to be misguided.

### B. Potential Conflict Regarding J.C. Clift Employees

The Court's determination that Sutter and other members of Sutter & Gillham must be disqualified because of Sutter's attorney-client relationship with J.C. Clift renders it unnecessary to analyze any conflict of interest related to Sutter & Gillham's representation of the J.C. Clift employees during grand jury proceedings.

### III. CONCLUSION

For the reasons stated above, the Court finds that Luther Sutter and the firm Sutter & Gillham should be and hereby are **DISQUALIFIED** from representing Defendant William Kenneth Farber in this matter because of a conflict of interest. Defendant shall continue to be represented by his remaining counsel of record, Travis Morrissey and Morse Gist.

**IT IS SO ORDERED**, this 10th day of January, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

failing to reveal disciplinary actions taken against them in another state). The Government does not assert that Sutter has engaged in any such misconduct or unethical actions in this matter, and the Court sees no indication of such.